El Pueblo de Puerto Rico, Ex rel. Dr. José Mendín Sabat, demandante y apelante, *v.* Sergio Seijo, Antonia Brandi y Augusto Padilla, querellados y apelados.

No. 5996.—*Sometido:* Abril 14, 1932. *Resuelto:* Abril 26, 1932.

*Hon. Attorney General Interino, A. Ortiz Toro; R. Rivera Zayas, L. Tormes y A. Reyes Delgado,* abogados del apelante; *Bolívar Pagán,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El Pueblo de Puerto Rico, a requerimiento del Doctor José Mendín Sabat, Director de Beneficencia del municipio de Arecibo, inició un procedimiento de *quo warranto* en la corte de distrito contra Sergio Seijo, Antonia Brandi y Augusto Padilla, a fin de que la corte declarara que el querellado Sergio Seijo no tenía derecho a desempeñar el puesto de Alcalde del municipio de Arecibo, ni tampoco a sustituirlo en el mismo los otros querellados Antonia Brandi, Tesorera-Directora Escolar, y Augusto Padilla, Director de Obras Públicas, correspondiendo la sustitución al querellante en su carácter de Director de Beneficencia.

Que Seijo fué electo alcalde de Arecibo y estaba desempeñando dicho puesto al iniciarse el procedimiento y lo está aún, y que el querellante y los otros querellados eran y son el Director de Beneficencia, el Tesorero-Director Escolar y el Director de Obras Públicas del dicho municipio, son hechos admitidos. Tampoco hay duda alguna de que en el caso de vacante, correspondería al Director de Beneficencia desempeñar interinamente, en primer término, el puesto de alcalde, y sucesivamente al Tesorero-Director Escolar y al Director de Obras Públicas, y de que el Director de Beneficencia ha requerido a Seijo para que le entregue el cargo y Seijo se ha opuesto, siendo también conocida la actitud contraria al querellante de los otros dos querellados.

Las cuestiones en controversia son las de si existe realmente una vacante en el puesto de alcalde por haber sido Seijo debidamente destituído por la Asamblea Municipal y la de si el querellante no obstante haber sido nombrado Director de Beneficencia, se encontraba al iniciarse el procedimiento y se encuentra aún suspendido de su empleo por autoridad competente.

 Para probar que el querellado Seijo había sido destituído de su cargo de alcalde, el querellante presentó copia certificada de los procedimientos que tuvieron lugar en la Asamblea Municipal de Arecibo, tales como constaban en el *return* de cierto caso de *certiorari* seguido ante la propia corte de distrito, y ocurrió lo que sigue:

"Abogado Sr. Bolívar Pagan. Me opongo a la presentación de esta evidencia. Voy a citar ley y jurisprudencia para demostrar que esto no es admisible en evidencia en este caso. (Argumentó). Tampoco es evidencia primaria.

"Hon. Juez. ¿Cuál es el objeto de la presentación de la evidencia?

"Abogado Sr. Rivera Zayas. Probar las alegaciones tercera y cuarta de nuestra contención. (Argumentó).

"Hon. Juez. La Corte admitiría esos documentos condicionalmente para darle el valor probatorio que puedan tener, argumentando las partes en el fondo si es prueba o no admisible, pero preferiría la prueba primaria, la que obra unida a los autos.

"Abogado Sr. Rivera Zayas. Eso. Eso está bien.

"Hon. Juez. La Corte admite esa prueba ahora condicionalmente, para que las partes argumenten en el fondo del caso su admisibilidad, y se reservará una excepción a la parte que perjudique la resolución de la Corte."

Luego la corte en su relación del caso y opinión decidió:

"El documento, sobre cuya genuinidad hemos de dictaminar, es una relación detallada de ciertos presuntos procedimientos incoados por la asamblea municipal de Arecibo, con el fin de conocer de una impugnación pública que culminó en la destitución del señor Sergio Seijo como alcalde del municipio de Arecibo, cuya relación viene firmada por siete de los once asambleístas que componen dicho cuerpo.

"La prueba testifical aportada por el relator tendió a evidenciar: que el día primero de septiembre de 1931, como a las dos de la tarde, José Toledo García, presidente de la asamblea municipal, expidió una convocatoria a los demás miembros para una sesión que habría de efectuarse al día siguiente; que al reunirse los asambleístas la noche del 2 de septiembre de 1931, y estando enfermo el secretario interino del municipio, José Santos Rodríguez, se nombró secretario accidental a otro ciudadano para que actuase como tal; que

no habiendo podido conseguirse *el libro oficial de actas de la asamblea municipal,* los nueve miembros presentes de dicho organismo acordaron llevar adelante los procedimientos y posteriormente decidieron además presentar como constancia de dichos procedimientos el llamado *return* suscrito por los propios asambleístas. .

"De manera que los escritos que forman el legajo denominado *return* no son *copias certificadas* de sus originales obrantes en el *libro oficial de actas.*

"Por otra parte, los querellados presentaron en evidencia una certificación expedida por el secretario municipal interino, creditiva de que, según el *libro oficial* de actas, la asamblea municipal de Arecibo no ha celebrado *sesión oficial* alguna desde el día 9 de julio de 1931 hasta el momento de su expedición, 22 de diciembre de 1931.

"De modo que, de un lado, tenemos a siete asambleístas que suscriben un llamado *return,* que, a juicio de ellos, contiene todas las actuaciones verificadas por la asamblea con respecto a la impugnación y destitución del alcalde Seijo; y del otro, tenemos una certificación expedida por el funcionario encargado de los libros de actas oficiales, que dice no haberse verificado sesión alguna.

"La Ley Municipal vigente dispone:

" 'Artículo 25.—La Asamblea Municipal hará constar sus *procedimientos,* resoluciones y las ordenanzas que aprobare, *en actas que se llevarán en libros encuadernados y foliados, habilitados por certificación del Presidente y Secretario,* extendida en la primera página útil de cada libro, creditiva del número de páginas en blanco de que consta cada uno de tales libros. Estos libros se conservarán por el *Secretario de la Asamblea y constituirán récords del mismo carácter y naturaleza que las actas de la Cámara de Representantes de Puerto Rico.'* Bastardillas nuestras. Leyes de 1928, página 353.

"La Carta Constitucional (Ley Orgánica) de Puerto Rico, al referirse a la Legislatura Insular, prescribe:

" 'Artículo 34.—* * * * *

" 'Cada Cámara llevará un libro de actas, y podrá, a su voluntad, de tiempo en tiempo, publicarlas, y la votación por lista sobre cualquier cuestión se hará constar en el acta cuando lo exigiere una quinta parte de los miembros presentes.'

"Y, congruente con esta prescripción constitucional, el Código Político dispone que el *Libro* de Actas de cada una de las Cámaras de la Asamblea Legislativa, deberá ser autenticado por las firmas del presidente y secretario respectivos. Art. 27 Código Político.

"Se dispone además por nuestra ley fundamental que *el hecho* de estampar su firma el presidente de cada Cámara en los *proyectos* y *resoluciones* se hará constar en el acta. Y este libro de actas, o estatutos o resoluciones publicadas, o copias certificadas expedidas por el secretario de sus originales del libro de actas, son el único medio de probar los procedimientos de la Asamblea Legislativa. Art. 69, inciso 2, Ley de Evidencia.

"Si los *libros de actas* de las asambleas municipales constituyen *récords* del mismo carácter y naturaleza que las actas de la Cámara de Representantes de Puerto Rico, (Art. 25 Ley Municipal), la admisión de evidencia ajena a *dichos libros* debe regirse por idénticas normas a las que gobiernan las actas de ese cuerpo colegislador.

"Así como no sería posible probar los procedimentos de una cualquiera de las Cámaras de la Asamblea Legislativa mediante el dicho o escrito firmado por los legisladores—aunque el número de los firmantes constituya la mayoría del total de sus miembros—si tal acto o procedimiento no consta en el *Libro de Actas*,. así también son inadmisibles tales escritos con pretensiones de evidenciar procedimientos de una asamblea municipal, cuando dichos actos no constan en el libro de actas de la legislatura municipal.

"La Ley de Evidencia fija la forma en que pueden probarse los actos de una corporación municipal de Puerto Rico, así:

" 'Artículo 69.—Otros documentos oficiales podrán probarse como sigue:

" '1. * * * * * * *
" '2. * * * * * * *
" '3. * * * * * * *
" '4. * * * * * . * *

" '5. Los actos de una corporación municipal de Puerto Rico, o de una junta o departamento de la misma, mediante copia, certificada por el correspondiente archivero, o mediante un libro impreso, publicado por autoridad de dicha corporación.' Ley de Evidencia, Estatutos Revisados, pág. 307.

"Nuestro Tribunal Supremo, en decisión rendida el día 25 de enero de 1932, en el caso de *El Pueblo* v. *Marquez Rivera,* interpreta los incisos 5 y 6 del Art. 69 de la Ley de Evidencia. Se trataba de un caso de violación y para probar la edad de la perjudicada se presentó por el ministerio público una certificación expedida por el secretario-auditor encargado del registro civil de San Sebastián. Refiriéndose a este documento, nuestro más alto tribunal se expresa de este modo:

" 'A .nuestro juicio la certificación no era admisible por no ser copia fiel y exacta de la inscripción, como sostuvo la defensa, y por tanto carecía de fuerza legal. En una palabra, que no podía considerarse a virtud de su presentación como introducida en evidencia la inscripción del nacimiento de Marcelina Soto, la perjudicada.

" 'La Ley de Evidencia es terminante. Todo funcionario público bajo cuya custodia obrare algún documento público está en la obligación de facilitar, al requerírsele, copia certificada del mismo, dice su art. 48. Y al determinar el 69 como podrán probarse otros documentos oficiales, prescribe en sus números 5 y 6: "Los actos de una corporación municipal de Puerto Rico, o de una junta o departamento de la misma, mediante copia, certificada por el correspondiente archivero, o mediante un libro impreso, publicado por autoridad de dicha corporación. 6. Los documentos de cualquier otra clase en Puerto Rico, mediante el original o una copia, certificada por el guardador legal de aquél.' El Pueblo v. Marquez Rivera, resuelto en 25 de enero de 1932.

' ' ⁂　　　⁂　　　⁂　　　⁂　　　⁂　　　⁂　　　⁂

"Así pues, no siendo los documentos que se tratan de introducir en evidencia copias certificadas de originales constantes en el *libro oficial de actas* de la asamblea municipal y por lo contrario apareciendo que en dichos libros no se hizo constar acuerdo alguno desde el día 9 de julio de 1931 hasta el presente, hay que concluir indefectiblemente que el legajo denominado 'Return de la Asamblea Municipal de Arecibo' es inadmisible, como evidencia en este caso."

De suerte que al no admitirse la evidencia, el caso cayó por su base y, como lógica consecuencia, la petición fué desestimada. Repetidamente hemos dicho que no es buena práctica reservarse la resolución de si una prueba presentada es o no admisible, para después de sometido definitivamente el pleito. Tal cuestión debe decidirse durante el juicio. Si es verdaderamente difícil, es preferible suspender la vista por el tiempo que sea absolutamente necesario para estudiarla y resolverla y entonces seguir con el juicio adelante.

██ En su alegato el apelante señala como errónea la decisión de la corte y argumenta extensamente el señalamiento. La parte apelada también discute hábilmente la cuestión en su alegato.

El caso de *El Pueblo* v. *Márquez,* 43 D.P.R. 46, invocado por la corte sentenciadora, no tiene aplicación. ·Allí la certificación estaba expedida por el secretario municipal, y no se consideró admisible por no ser una copia exacta de su original. Aquí se presentaron los mismos originales y no se admitieron por no ser copias expedidas por el funcionario que de acuerdo con la ley debía tenerlos bajo su custodia, funcionario que había expedido además una certificación negativa de la existencia de los originales en los récords a su cargo. Se trata, pues, de casos distintos.

No hay duda alguna que de acuerdo con las disposiciones de la Ley Orgánica y de la Ley Municipal citadas por la corte de distrito, los procedimientos de las Asambleas Municipales puertorriqueñas se hacen constar en libros de actas que lleva y custodia el secretario del municipio que es un funcionario nombrado por el alcalde. Tampoco la hay de que de acuerdo con el precepto de la Ley de Evidencia que también cita el juez sentenciador, la manera de probar esos procedimientos es a virtud de copias certificadas de los mismos expedidas por el Secretario.

Esa es la regla normal y general. Pero existen excepciones. Y el apelante sostiene con razón a nuestro juicio que este caso está comprendido dentro de ellas.

Veamos lo sucedido. Como se ha indicado, los documentos de que se trata se habían elevado en forma de *return* en un caso de *certiorari* iniciado ante la misma corte. El *return* comienza así:

"CORTE DE DISTRITO DE ARECIBO.—Sergio Seijo vs. Asamblea Municipal de Arecibo.—Civil No. 12733.—Certiorari.—RETURN de la Asamblea Municipal de Arecibo, P. R.—ASAMBLEA MUNICIPAL DE ARECIBO, PUERTO RICO.—Sesión Especial del día 3 de noviembre de 1931.

"RESOLUCIÓN.—Para acordar los documentos que constituyen el 'Return' de esta Asamblea Municipal al Auto de Certiorari expedido por la Hon. Corte de Distrito de Arecibo, en el caso Civil No. 12733, de Sergio Seijo vs. Asamblea Municipal de Arecibo, P. R., y para otros fines.

"POR CUANTO, esta Asamblea Municipal resolviendo un pliego de Cargos formulados por Martín Martínez y Jovito de la Rosa contra Sergio Seijo, Alcalde de Arecibo, declaró a éste culpable del cargo que se le formulara por CONDUCTA INMORAL Y CONTRARIA A LA LEY, en varias de sus especificaciones, y en 15 de septiembre de 1931 le destituyó definitivamente del cargo de Alcalde de Arecibo;

"POR CUANTO, para revisar el Procedimiento de Impeachment que ha culminado en su destitución el dicho Sergio Seijo ha recurrido, mediante Certiorari, ante la Hon. Corte de Distrito de Arecibo, y dicho Tribunal ha ordenado sean enviados al mismo, para su revisión, los procedimientos habidos en dicho 'Impeachment',

"POR TANTO: RESUÉLVASE POR LA ASAMBLEA MUNICIPAL DE ARECIBO, P. R.—

"Primero:—Que el 'RETURN' a dicho Auto de Certiorari sea elevado por esta Asamblea Municipal de Arecibo, P. R., a la Hon. Corte de Distrito de Arecibo, certificado por los miembros de la Asamblea presentes en la sesión del día de hoy, ya que habiendo sido requerido el Secretario Interino, Sr. José Santos Rodríguez, se ha negado a concurrir.—

"Segundo:—Dicho 'RETURN' lo constituyen todos los documentos, órdenes, citaciones, acuerdos y resoluciones adoptados por esta Asamblea Municipal, en dicho Procedimiento de Impeachment. Y por la presente se envían al Hon. Tribunal de Distrito de Arecibo, los siguientes documentos que existen en la inmediata custodia del señor José Toledo García, Presidente de esta Asamblea:

"1. Pliego de cargos, original, radicado con el Presidente de la Asamblea, Sr. José Toledo García, contra el Sr. Sergio Seijo, en su carácter de Alcalde de Arecibo, por Martín Martínez y Jovito de la Rosa, y declaración jurada sobre el acto de la notificación.

"2. Convocatoria original expedida por el Presidente de la Asamblea, Sr. José Toledo García, el 1.º de septiembre de 1931, llamando a la Asamblea Municipal de Arecibo, a una Sesión Especial para considerar dichos cargos.

"3. Copia de las notificaciones que, por orden del Presidente de la Asamblea, fueron diligenciadas en las personas del Sr. Sergio Seijo, Alcalde acusado, y José Santos Rodríguez, Secretario Interino del Municipio de Arecibo, entregada a éstos en 1.º de septiembre de 1931, por el ciudadano José María Román, así como el certificado de notificación que bajo juramento ha firmado éste.

"4. Originales del informe rendido por un Comité designado por la Asamblea para estudiar dicho pliego de cargos, y de la resolución de la Asamblea, adoptada en 2 de septiembre de 1931, to-

mando jurisdicción sobre el procedimiento de Impeachment incoado, fijando fecha para que el Alcalde contestara, y fecha para la vista de los cargos, y suspendiéndolo de empleo y sueldo, provisionalmente, designando sustituto al Director de Beneficencia, Dr. José Mendín Sabat.

"5. Original, con su certificado, de diligenciamiento, de la citación expedida al Alcalde impugnado, bajo la firma de los Asambleístas, según acuerdo adoptado en la sesión del día 3 de septiembre de 1931, diligenciada en la persona del Sr. Sergio Seijo, por el Sr. Francisco Morales Colón, Sub-Marshal de la Corte Municipal de Arecibo, en 3 de septiembre de 1931, según aparece de su certificado de notificación jurado ante el Juez Municipal en 14 de septiembre de 1931.

"6. Original, con su certificado de diligenciamiento, de la Convocatoria del Sr. Presidente de la Asamblea Municipal de Arecibo, llamando a ésta a sesión Especial para continuar el Procedimiento de Impeachment incoado contra el Alcalde, Sr. Sergio Seijo, para el día 14 de septiembre de 1931.

"7. Copia de las notificaciones cursadas por el Presidente de la Asamblea Municipal al Sr. Alcalde acusado y al Secretario Interino, Sres. Sergio Seijo y José Santos Rodríguez, y entregadas a éstos por el Sr. José María Román, avisándoles nuevamente de la fecha fijada para la vista del caso.

"8. Original de la relación y opinión del caso dictada por el Comité de Ponencia designado por la Asamblea en su sesión del día 14 de septiembre de 1931, y aprobada unánimemente por la Asamblea en 15 de septiembre de 1931.

"9. Original de la Resolución de la Asamblea Municipal de 15 de septiembre de 1931, aprobada en primera, segunda y tercera lecturas, en votación por lista, haciendo suya la relación y opinión del caso, y destituyendo al Alcalde de Arecibo, P. R., Sr. Sergio Seijo, de su mencionado cargo, junto con su certificado de Notificación diligenciado por el referido Francisco Morales Colón, jurado ante el Juez Municipal en 16 de septiembre de 1931.

"10. Originales de los juramentos suscritos por el Secretario Accidental de la Asamblea, Sr. Tomás Méndez y el Taquígrafo, Sr. Jesús Rosado, según fueron prestados en la sesión del 14 de septiembre de 1931.

"11. Una certificación de las actas levantadas por la Asamblea Municipal de Arecibo, a través de su Secretario Accidental Sr. Tomás Méndez y el Presidente Sr. Toledo García, y aprobadas por la Asamblea en sus sesiones de los días 3, 14 y 15 de septiembre

de 1931 y 2 de noviembre de 1931 y autorizadas por las firmas de todos los asambleístas presentes, ante el Hon. Juez Municipal de Arecibo.

"Tercero:—Que el original de esta Resolución sea acompañado a dicho Return, y así mismo se acompañe una certificación del Secretario Ejecutivo de Puerto Rico, creditiva de quiénes son en la actualidad los miembros de la Asamblea Municipal de Arecibo, la Convocatoria original expedida ·para este acto y la Resolución original adoptada por la Asamblea Municipal de Arecibo en 2 de noviembre de 1931.

"Cuarto:—Que luego de aprobada esta Resolución, firmándola todos los Asambleístas presentes, y autorizadas por el Hon. Juez Municipal sus firmas, sean entregados dichos documentos por el Sr. Presidente de la Asamblea, a la Hon. Corte de Distrito· de Arecibo, junto a una moción que deberá preparar el abogado de esta Asamblea, para la comparacencia de este Organismo.

" (Firmados José Toledo García, Pres. Asamblea Mpal. de Arecibo, P. R.—Tomás Méndez, Secretario Accidental.—M. Cortés Nieves.—José Cruz Gerena.—(Al dorso) Tomás García.—Santos Pérez. —Teodoro Villanueva.—Alfredo Martínez.

"Affidavit Número 11634.—Las anteriores firmas han sido estampadas en la Resolución que antecede por los Sres. José Toledo García, Presidente de la Asamblea Municipal de Arecibo, Tomás Méndez, Secretario Accidental de dicho cuerpo, y Manuel Cortés Nieves, José Cruz Gerena, Tomás García García, Teodoro Villanueva, Santos Pérez Lugo y Alfredo Martínez, Asambleístas Municipales de Arecibo, a quienes conozco personalmente. El acto de la firma se llevó en el Salón de sesiones de la Asamblea Municipal de Arecibo, donde dichos Sres. estaban reunidos en Sesión Especial.—Arecibo, P. R., a 3 de noviembre de 1931.—(Firmado) Puro Girau, Juez Municipal de Arecibo.—(Hay un sello de la Corte Municipal de Arecibo y un sello de Rentas Internas de 25 centavos, debidamente cancelado).''

Siguen todos los documentos. Los designados bajo el número once, comienzan así:

"Asamblea Municipal de Arecibo, P. R.

"Nosotros, José Toledo García, Presidente de la Asamblea Municipal de Arecibo, P. R., Manuel Cortés Nieves, Alfredo Martínez, Santos Pérez Lugo, Ernesto Viñas, José Cruz Gerena, Tomás García, Teodoro Villanueva, y Serafín Orama, Asambleístas Municipales de Arecibo, P. R., y Tomás Méndez, Secretario Accidental de dicho

cuerpo, reunidos en sesión especial en el salón de actos de la Asamblea Municipal, casa Alcaldía de Arecibo, P. R., hoy día 2 de noviembre de 1931, convocada previamente por el Presidente de la Asamblea Municipal de Arecibo, P. R., para preparar el RETURN que ha de enviarse a la Hon. Corte de Distirto de Arecibo, a virtud del auto de Certiorari expedido por dicho Hon. Tribunal en el caso de Sergio Seijo contra la Asamblea Municipal de Arecibo, P. R., CERTIFICAMOS:

"PRIMERO:—Que en nuestro poder y bajo la custodia inmediata del señor José Toledo García, Presidente de la Asamblea Municipal, existe un libro de Actas, habilitado por esta Asamblea Municipal de Arecibo, P. R., para hacer constar en él los procedimientos y resoluciones de esta Asamblea en el caso de Impeachment incoado por Martín Martínez y Jovito de la Rosa contra Sergio Seijo, Alcalde de Arecibo, P. R., del cual aparecen y transcribimos literalmente los siguientes particulares:

"A—Acta de Habilitación del Libro.

"Nosotros, José Toledo García, Presidente de la Asamblea Municipal de Arecibo, P. R., y Tomás Méndez, Secretario Accidental de la Asamblea Municipal de Arecibo, P. R., designados por dicha Asamblea, para actuar como secretario de la misma, en ausencia del Secretario interino Sr. José Santos Rodríguez, quien no ha comparecido por encontrarse enfermo, y nosotros, Manuel Cortés Nieves, Teodoro Villanueva, José Cruz Gerena, Ernesto Viñas Vales, Alfredo Martínez, Serafín Orama, Santos Pérez Lugo y Tomás García García, Asambleístas Municipales de Arecibo, P. R., CERTIFICAMOS: que el presente libro, que se marca con el No. 1 (número uno), Libro de Actas de Sesiones Judiciales de la Asamblea Municipal de Arecibo, P. R., será utilizado para records de los procedimientos, acuerdos, resoluciones y providencias que adoptare la Asamblea Municipal de Arecibo, P. R., en el caso de Impeachment contra el Alcalde de Arecibo, P. R., Sr. Sergio Seijo, en los cargos formulados contra éste por Don Martín Martínez y Jovito de la Rosa; que dicho libro tiene ocho folios de índice que no serán utilizados, y después de esta habilitación está foliado, con la misma, desde el número uno al ciento ochenta y cuatro inclusives, y que el mismo queda habilitado así, a los efectos que se indica. Firmados: José Toledo García, Pres. Asamblea Municipal, Tomás Méndez, Secretario Accidental, M. Cortés Nieves, Teodoro Villanueva, Alfredo Martínez, S. Orama, José Cruz Gerena, E. Viñas, Tomás García, Santos Pérez, Asambleístas.

"B—Acta Número 1, Asamblea Municipal de Arecibo.

"SESIÓN ESPECIAL JUDICIAL,

"En la ciudad de Arecibo, P. R., siendo las . . ." La certificación termina como sigue:

"CERTIFICAMOS, finalmente, que tanto el Libro de Actas de que se han tomado los particulares anteriomente transcritos y la documentación original que se acompaña, se encuentran en poder de la Asamblea Municipal de Arecibo, bajo la inmediata custodia de su Presidente Sr. José Toledo García, por haberse negado a actuar en todo este procedimiento el Secretario Municipal de Arecibo, quien actúa interinamente, el Sr. José Santos Rodríguez, de cuyo hecho damos fe ahora los suscribientes y toda la documentación de este procedimiento.

"Y para enviar a la Hon. Corte de Distrito de Arecibo, como 'Return' al caso de Certiorari No. 12733, de dicho Hon. Tribunal, expedimos la presente, en Arecibo, P. R., a 3 de noviembre de 1931, en el Salón de Actos de la Asamblea Municipal de Arecibo, Casa Alcaldía. (Fdo.) José Toledo García, Pres. Asamblea Municipal; (Fdo.) Thomas Méndez, Sec. Accidental, (Fdo.) Alfredo Martínez, (Fdo.) M. Cortés Nieves, (Fdo.) Santos Pérez, (Fdo.) José Cruz Gerena, (Fdo.) Tomás García, (Fdo.) Teodoro Villanueva.

"Affidavit Número 11633. Yo, Puro Girau, Certifico: que encontrándome en el Edificio Alcaldía de Arecibo, fuí llamado por el Presidente de la Asamblea Municipal de Arecibo, P. R., Hon. José Toledo García, quien me informó se estaba celebrando una sesión de la Asamblea Municipal de Arecibo, P. R., y que deseaba dicho cuerpo que autorizase un affidavit de su autenticidad de las firmas de los asambleístas que aprobaban la transcripción que antecede, y en tal virtud certifico, que estando reunidos en el Salón de Sesiones de la Asamblea Municipal de Arecibo, P. R., los Sres. José Toledo García, Manuel Cortés Nieves, Tomás García, José Cruz Gerena, Teodoro Villanueva, Alfredo Martínez y Santos Pérez Lugo, a quienes conozco personalmente como Asambleístas Municipales de Arecibo, y el Sr. Tomás Méndez, Secretario Accidental de dicho cuerpo, procedieron a firmar y en mi presencia firmaron la certificación que antecede, extendida en 29 páginas de papel legal; y certifico finalmente que las firmas que aparecen en esta certificación son las legítimas de dichos señores. Arecibo, P. R., en el Salón de Sesiones de la Asamblea Municipal de Arecibo, a 3 de noviembre de 1931.— Hago constar que dichos señores juran la certeza de dichas transcripciones.—(Fdo.) Puro Girau, Juez Corte Municipal. (Hay un se-

llo de R. I. por valor de 25¢, cancelado, y el sello oficial de la Corte Municipal de Arecibo).''

¿Pudo la Asamblea Municipal de Arecibo actuar en la forma en que lo hizo?

Se trataba de un procedimiento de *impeachment* contra el alcalde. El secretario del municipio nombrado por el alcalde se había negado a actuar. Los libros de actas del municipio no fueron puestos a la disposición de la asamblea, ni encontrados por ésta en la búsqueda que de ellos hizo. Bajo esas circunstancias, la asamblea estuvo justificada a nuestro juicio en nombrar una persona que actuara como secretario. De otro modo hubiera faltado al cumplimiento de un deber que la misma ley le imponía, permitiendo que la rebeldía de un funcionario hiciera ineficaz su propia y exclusiva jurisdicción.

Quizá la no asistencia del secretario a la primera sesión de la asamblea no hubiera sido bastante para calificar de rebelde su actitud, porque alegó que se encontraba enfermo, pero la manera como después se condujo demuestra sin lugar a dudas de ningún género que su propósito firme y deliberado fué no sólo dejar de cumplir su deber para con la asamblea, si que además obstruirla en cuanto le fuera posible a los efectos de que no pudiera actuar válidamente en la sustanciación de los cargos presentados contra el alcalde.

Bajo las indicadas circunstancias, las siguientes autoridades sostienen la facultad de la asamblea para nombrar como nombró no el secretario del municipio, poder que corresponde al alcalde, sino un secretario que actuara como tal en el procedimiento de *impeachment,* a saber: artículo 36 del Código de Enjuiciamiento Civil, Dillon's Municipal Corporations, Vol. 2, p. 876, *El Pueblo v. Rodríguez,* 37 D.P.R. 425, *Attorney General* v. *Crocker,* 138 Mass. 214, y *State Ex Rel. Patty* v. *Makee,* 25 Pac. 294. Los casos de Massachusetts y Oregon, reportado el último en Pacific, se citan extensamente en el alegato del apelante.

Además, la asamblea fué excesivamente previsora al no limitarse a autenticar sus actuaciones por la fe que de ellas diera el secretario que nombrara, si que también al obtener que el juez municipal le prestara su cooperación en la forma en que lo hizo, y al ajustarse en todo cuanto más pudo a las prescripciones de la ley en la formación del nuevo libro de actas que habilitara. Difícilmente pudieron quedar autenticados en forma más fehaciente los procedimientos de corporación alguna que se hubiera visto obligada a actuar en la forma en que actuó en este caso la Asamblea Municipal de Arecibo. Y no se conformó con ello, si que en el mismo procedimiento de *quo warranto* declararon testigos que volvieron a identificar los documentos ante el propio juez sentenciador.

Siendo ello así, ¿pudo la corte de distrito rechazar la evidencia aportada por el relator? En manera alguna, a nuestro juicio. Se trataba de originales y los originales dentro del orden natural de las cosas tienen que constituir necesariamente en todos los casos la mejor prueba. Lo que sucede es que el Legislador basándose también en el orden natural de las cosas y en la realidad de los hechos, habiendo en consideración lo que significa y constituye un archivo público, autorizó su prueba por medio de copias certificadas por el funcionario que lo tiene bajo su custodia. Pero ello no quiere decir que si el original del récord público, por virtud de circunstancias especiales, se presentare como prueba, deba negarse su admisión por ser el original y no una copia. Lo que la ley requiere en última instancia es que ante el juzgador quede la mejor prueba de los hechos en controversia. La ley de evidencia resume en sus preceptos la experiencia y la sabiduría de los siglos en materia de prueba, dando reglas precisas para las diversas y complicadas situaciones que surgen en la práctica, y no debe ser interpretada de manera que anule su propósito fundamental y cuando se presente al juzgador lo mejor que existe deba éste rechazarlo porque no se ajuste a una norma establecida para probar aquello mejor sin necesidad de moverlo del sitio en que se encuentre.

Resuelta en sentido afirmativo la cuestión de si la prueba de los procedimientos de la asamblea en el caso del *impeachment* era admisible, veamos si demuestra o no que el procedimiento fué legal, y válida la destitución decretada.

Sostienen los querellados en primer término que no aparece de los documentos que la asamblea fuera convocada de acuerdo con la ley, ya que ésta (Ley Municipal de 1931, p. 609) prescribe en su artículo 29 que:

" . . . La asamblea municipal para oír y resolver cualquiera acusación presentada contra el alcalde, formulada por cualquier miembro de la asamblea municipal, por el Gobernador de Puerto Rico o por cualquier ciudadano, podrá reunirse previa convocatoria del presidente de la misma, en cualquier fecha que notificará el alcalde, dándole copia de los cargos con cinco días de anticipación al en que haya de celebrarse la vista, y luego de haber obtenido un *quorum*, para considerar la acusación formulada al alcalde, la asamblea podrá continuar reunida por todo el tiempo que fuere necesario para resolver el caso en definitiva; . . ."

Todo el argumento descansa en que el texto castellano de la ley dice como podemos notar: "en cualquier fecha que notificará *el* alcalde" y de los documentos no resulta que *el alcalde* notificara fecha alguna.

El texto inglés de la ley dice: "of which the mayor shall be notified" y ello es lo correcto. Cualquier persona de inteligencia común al leer el artículo 29 de la Ley Municipal podría dudar de si lo que se quiso decir por el Legislador fué que el alcalde notificara la fecha. Si es la asamblea la que podía oír cualquier acusación presentada *contra el alcalde* pudiendo reunirse al efecto previa convocatoria *del presidente* de la misma, ¿cómo se va a dejar la notificación y aun la fijación de la fecha al alcalde? Siendo dudoso el uso y significado del artículo *el,* su sentido debe ser buscado por su examen y comparación con las otras palabras y sentencias que le están relacionadas en el orden de una buena investigación, para llegar a su verdadero significado (art. 17 del Código Civil, 1930), y así procediendo se concluye que *el* significa *al* y que su aparición en el texto de la ley se debe a un

error de copia o tipográfico, que no puede tener el efecto de variar por completo el procedimiento a seguir.

■ Sostienen también los querellados que disponiendo la ley que los cargos se notificarán "con cinco días de anticipación al en que haya de celebrarse la vista" y demostrando los documentos que los cargos se notificaron el 3 de septiembre para verse el 14 del propio mes, la asamblea no tuvo facultades para actuar el 14.

A nuestro juicio la disposición legislativa no tiene el alcance que le dan los querellados. Debe concederse al alcalde un término mínimo de cinco días y la celebración de la vista debe ser rápida ya que el alcalde puede quedar suspendido como quedó en este caso, siendo la mejor práctica la de fijarla para un término que no exceda de cinco días, pero el hecho de que se fije para algunos días después no despoja de su jurisdicción a la asamblea. Nada demuestra una dilación abusiva reveladora de la intención de mantener al alcalde fuera de su puesto a virtud de la suspensión, sin investigar los cargos formulados y sin dictar la resolución definitiva que procediera. Aquí la suspensión se decretó el 2 de septiembre, notificándose el 3 y la investigación se practicó el 14, y el 15 del propio mes se dictó la resolución final por la asamblea.

■ Examinados en sí los documentos presentados, encuéntrase que en las convocatorias, citaciones y sesiones de la asamblea se cumplió con los requisitos que marca la ley. La querella que dió origen al procedimiento fué presentada bajo juramento por dos ciudadanos. La asamblea se reunió primero para considerarla, citando al alcalde que no compareció. Acordó que era suficiente y decretó la suspensión del alcalde, fijando fecha para la investigación. El alcalde fué notificado con copia de la querella y de la fecha del señalamiento y tampoco compareció. La asamblea, citados todos los miembros que la componían y habiendo comparecido un número suficiente, oyó la prueba practicada y dictó su resolución final declarando no probados algunos de los cargos y probados

otros y a virtud de los probados decretó la destitución del alcalde, resolución que quedó firme por no haber el alcalde apelado de ella para ante este Tribunal Supremo, recurso directo que le concede la ley. Ley Municipal de 1931, Sec. 29, Leyes de 1931, p. 610.

A virtud de todo lo expuesto, debe resolverse en la afirmativa la primera cuestión en controversia, o sea la de si existe una vacante en el puesto de Alcalde de Arecibo por haber sido el querellado Sergio Seijo, que lo desempeñaba por elección popular, debidamente destituído por la Asamblea Municipal.

 Examinemos la segunda. Alegan los querellados que aunque se llegara a la anterior conclusión, debería declararse sin lugar la solicitud de *quo warranto,* porque los autos demuestran que si bien el relator Doctor Mendín fué nombrado por el Alcalde Director de Beneficencia del Municipio de Arecibo, el propio alcalde le formuló cargos y lo suspendió de empleo y sueldo estando aún dichos cargos pendientes de investigación y resolución, correspondiendo, por tanto, la sustitución en el caso de que procediera, no al Director de Sanidad, sino al Tesorero Director Escolar, de acuerdo con la ordenanza de turnos aprobada por el municipio.

Los autos demuestran que a principios de septiembre de 1931, Seijo, como alcalde, dirigió una carta suspendiendo a Mendín como Director de Beneficencia, siendo contradictoria la prueba de la exacta fecha de la carta y la de su entrega, aportada por los propios querellados. Estos presentaron una copia que tenía fecha de septiembre 1º. y al pie una nota que dice: "Entregada al Dr. José Mendín Sabat, en Arecibo, sept. 2, a las 7 y 45 minutos de la mañana. Fdo. Fco. Duprey." Llamaron a declarar al Dr. Mendín y éste aseguró que la carta no le fué entregada hasta el 4 de septiembre. Duprey no fué llamado a declarar.

El 8 de septiembre Seijo dirigió otra carta a Mendín comunicándole que hacía como dos horas que la Corte de Distrito de San Juan había dictado una orden suspendiendo los

efectos de un aparente acuerdo adoptado por la Asamblea Municipal que tendía a suspenderlo de su cargo y que habiendo investigado los hechos que dieron origen a los cargos que le formulara "hace varios días" creía justo declararle que lo encontraba inocente y lo reponía en su puesto. Contestó el Doctor Mendín el 9 y el 10 volvió a escribirle Seijo a Mendín como sigue:

". . . Señor: Recibí su carta de ayer, donde me notificaba que usted había vuelto a asumir las funciones de su cargo, pero desde las primeras horas de la mañana de ayer cuando le vi en su oficina, no he vuelto a verle trabajando como Ud. acostumbraba en su cargo. Por la presente le formulo el siguiente cargo: USTED HA ABANDONADO ENTERAMENTE LAS FUNCIONES DE SU EMPLEO, ABANDONANDO EL SERVICIO, DEJANDO SIN ASISTENCIA MÉDICA A LOS PACIENTES POBRES Y NO CUMPLIENDO NINGUNA DE LAS DEMÁS FUNCIONES DE SU CARGO COMO DIRECTOR DE BENEFICENCIA DE ARECIBO. Por tal motivo, por abandono, le formulo el anterior cargo y desde hoy queda usted suspenso de empleo y sueldo, todo lo cual hago en ejercicio de facultades que me confiere la vigente Ley Municipal. . . ."

Contestó el Doctor Mendín defendiéndose y así quedó el asunto sin que conste que se haya tomado en él resolución alguna.

También presentaron los querellados copia de la carta dirigida por el alcalde Seijo a la querellada Antonia Brandi. Lee así:

"2 de septiembre de 1931. Sra. Antonia Brandi de Seijo, Arecibo, P. R. Señora: En ejercicio de facultades que me concede la Ley, por la presente nombro a usted TESORERO DIRECTOR ESCOLAR del Municipio de Arecibo, Puerto Rico, para que tome posesión de dicho cargo hoy mismo, si le es posible, antes de las 10:00 A. M. Atentamente, Fdo. SERGIO SEIJO, Alcalde de Arecibo."

Sostiene el relator que las suspensiones decretadas por Seijo no tienen eficacia porque Seijo estaba suspendido a su vez de su cargo de alcalde al decretarlas y alegan los querellados que habiendo la Corte de Distrito de San Juan decretado la suspensión de la orden de la asamblea, Seijo quedó restablecido en todos sus poderes en el caso de que los hu-

biera perdido por el decreto de la asamblea, y por tanto, que su orden de suspensión de Mendín fué válida y está en todo su vigor.

"La suspensión de los funcionarios tiene lugar y efecto a partir del tiempo en que la orden de suspensión es expedida y notificada." Rigiéndonos por este principio, la suspensión de Seijo como alcalde decretada por la Asamblea Municipal el 2 de septiembre y notificada al alcalde al día siguiente comenzó a tener efecto el 3 de septiembre.

Conocemos la prueba aportada por los querellados para demostrar la fecha de la suspensión de Mendín por Seijo. Aun cuando la primera carta de Seijo tuviera fecha 1°. de septiembre, ¿cuándo fué notificada a Mendín? Entre una simple nota puesta por una persona al pie de una copia diciendo que entregó el original el 2 de septiembre y la declaración bajo juramento de la persona que la recibió sosteniendo que lo fué no el 2 sino el 4 de septiembre, el conflicto debe decidirse en pro de la declaración jurada, especialmente habida en consideración la rara conducta seguida por Seijo puesta de relieve no sólo por sus cartas del 8 y del 10 de septiembre dirigidas a Mendín, sino por la que dirigiera a la querellada Antonia Brandi, que es su propia esposa, nombrándola en documento que lleva fecha 2 de septiembre, Tesorero Director Escolar para que tomara posesión de dicho cargo ese mismo día, antes de las 10:00 A. M. Parece conveniente decir que las dos suspensiones del Dr. Mendín, las basó Seijo en cargos formulados por él mismo contra el Doctor.

Resuelto que la primera suspensión no se notificó hasta el 4, es bien claro que lo fué cuando ya Seijo estaba suspendido y, por tanto, que no tenía que ser obedecida. Pero se insiste en que es válida la suspensión del 10 de septiembre porque la suspensión de Seijo había sido suspendida a su vez por la Corte de Distrito de San Juan en cierto recurso de *certiorari*.

En efecto, cuando la asamblea acordó actuar sobre los cargos que se le presentaran contra el alcalde Seijo, éste se

dirigió a la Corte de Distrito de San Juan y le pidió que reclamara los autos y decretara la nulidad del procedimiento, suspendiendo entre tanto la orden de suspensión de la asamblea, y la corte accedió. ´ Luego la propia corte desestimó el auto de *certiorari* y de su resolución final Seijo apeló estando aún pendiente de resolución el recurso.

El relator en su alegato estudia ampliamente la naturaleza del recurso de *certiorari,* del clásico y del autorizado por la Ley Municipal, y el poder que las cortes tienen dentro del mismo. También sobre los efectos de una resolución desestimando la petición y sobre los de la apelación de esa resolución para ante el Tribunal Supremo. Los querellados tratan la cuestión ampliamente en su alegato.

No seguiremos ni al uno ni a los otros. Fuera cual fuere la autoridad que la corte de distrito tuviera para intervenir por *certiorari,* es lo cierto que se negó finalmente a ejercitarla cuando se enteró del hecho de haber sido el alcalde destituído de su cargo por la asamblea. El alcalde destituído tenía entonces un recurso rápido, directo, eficaz para ante el Tribunal Supremo, y al dejar de ejercitarlo, quedó firme la destitución. Dentro de ese recurso pudo y debió Seijo haber levantado todas las cuestiones envueltas desde el principio hasta el fin del procedimiento de *impeachment* y esta corte hubiera resuelto si la querella era suficiente, si pudo decretarse la suspensión, si la asamblea se constituyó válidamente, si su resolución final estuvo bien fundada, etc.

Fué el propio querellado Seijo el que acató la actuación de la asamblea y no puede invocar ahora otro recurso por él iniciado en el que se dictó cierta medida previa a su instancia, recurso desestimado totalmente después por improcedente, para hacer en cierto modo ineficaz la destitución eliminando al Director de Sanidad y haciendo que la sustitución recaiga en su propia esposa nombrada por él Tesorero Director Escolar y sobre quien, como Directora Escolar, versaba uno de los cargos que se formularon contra él y se declararon probados por la asamblea, a saber:

"Es grave también y constituye violaciones de ley, y desorden administrativo, el permitir como ha permitido el Alcalde querellado, el que su esposa Doña Antonia Brandi, Directora Escolar de este Municipio, recibiera distintas cantidades de dinero, provenientes de la venta de ALMUERZOS en los COMEDORES ESCOLARES de este Municipio de Arecibo, y de que ese dinero se dispusiera, sin ingresarlo en la Tesorería Municipal de Arecibo, según se le imputa en la especificación NOVENA de la querella."

A virtud de todo lo expuesto, debe de igual modo concluirse que cuando la segunda suspensión del Doctor Mendín fué decretada por Seijo, éste se encontraba suspendido válidamente por la Asamblea y carecía de facultades para actuar.

Y así la segunda cuestión en controversia debe ser también resuelta en la afirmativa.

En el acto de la vista del recurso ante este tribunal, pidieron los querellados que en el caso de que esta Corte Suprema llegara a la conclusión de que debía revocar la sentencia de la de Distrito de Arecibo devolviera a ésta los procedimientos para que los continuara permitiéndoles introducir su prueba. El relator se opuso fuertemente manifestando que tal medida dilataría de tal modo el asunto que cuando llegara a resolverse sería ineficaz por haber vencido el término por el cual fué elegido el alcalde.

En relación con esa petición muestran los autos lo que sigue:

"Abogado Sr. Pagán. Antes de empezar a presentar mi prueba, que quede claro en el récord, que toda esta evidencia, tanto la documental como las declaraciones son condicionales, sujeta a lo que resuelva la Corte de si es admisible o no el *return* ese.

"Hon. Juez. Si la corte resuelve que el denominado *Return* no es admisible en evidencia todas las declaraciones sobre eso quedan en el aire.

"Abogado Sr. Pagán. Me reservo el derecho de presentar prueba en caso de que eso no fuere admitido.

"Abogado Sr. Rivera Zayas. No puede ser. (Argumentó).

"Abogado Sr. Pagán. ¿Entonces eso lo discutimos en los alegatos?

"Hon. Juez. Sí, en los alegatos se discute esa cuestión."

Y los querellados procedieron entonces a presentar la prueba que estimaron conveniente.

Si se admitiera la teoría de los querellados, los pleitos podrían dilatarse indefinidamente. El procedimiento quedó abierto a prueba y fué sometido finalmente a la decisión de la corte. Lo mismo que los querellados presentaron lo que alegan que es parte de su evidencia, pudieron y debieron presentarla toda. Tuvieron su día en corte y no pueden quejarse.

Por virtud de todo lo expuesto, *debe revocarse la sentencia recurrida* y en su lugar dictarse otra declarando que Sergio Seijo no tiene derecho a desempeñar las funciones de Alcalde del Municipio de Arecibo, ni a recibir los honores, derechos y emolumentos que de dicho cargo se derivan y menos a ejercer las funciones del mismo y que al relator Dr. José Mendín Sabat corresponde como Director de Beneficencia del dicho municipio desempeñar interinamente el dicho cargo de Alcalde, no habiendo llegado, pues, el turno a Antonia Brandi ni a Augusto Padilla, debiendo expedirse mandamiento al Márshal de dicho Distrito para que en el caso de que el querellado Sergio Seijo se oponga, lo lance de las oficinas de la alcaldía instalando en ellas al relator Mendín, con apercibimiento tanto a Seijo como a Antonia Brandi y a Augusto Padilla de no obstaculizar al relator en el ejercicio de las funciones de alcalde interino de Arecibo, so pena de incurrir en las penalidades que determina la ley, *con imposición de las costas a los querellados.*

El Juez Asociado Señor Wolf no intervino.