MIGUEL LORENZO, demandante y apelante, *v.* JESÚS LORENZO PÉREZ, demandado y apelado.

No. 6762.—*Sometido:* Diciembre 18, 1935—*Resuelto:* Diciembre 24, 1935.

*José Veray, Jr.,* abogado del apelante; *García Méndez & García Méndez,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Ante la Corte de Distrito de Aguadilla presentó Miguel Lorenzo una demanda contra Jesús Lorenzo reclamándole cuatro mil dólares por los daños y perjuicios que le ocasionara el 24 de septiembre de 1931, en el barrio Voladoras del municipio de Moca, al acometerlo y agredirlo voluntaria y maliciosamente con un machete, cercenándole casi en su totalidad la mano derecha.

Contestó el demandado negando los hechos alegados en la demanda y alegando a su vez como defensas especiales que la demanda no aduce hechos suficientes para determinar una causa de acción, y que, de haber ocurrido el accidente, el mismo no pudo ser evitado por el demandado y se debió a la temeridad, malicia y voluntariedad del demandante.

Fué el pleito a juicio. Ambas partes practicaron su prueba y la corte el 31 de julio de 1933 dictó sentencia de-

clarando la demanda sin lugar, sin especial condenación de costas. En su relación del caso y opinión, declaró probados los siguientes hechos:

"Que allá por el día 24 de septiembre de 1931, y estando el demandado Jesús Lorenzo trabajando en su finca, se encaminó a la tienda de don Gil Sánchez, que queda en la carretera y a poca distancia de su expresada finca, para comprar unos encargos para su casa; que al pasar frente a la tienda de Antonio Soto, que queda entre la finca del demandado y la tienda de Gil Sánchez, Miguel Lorenzo, el demandante, y Jesús Lorenzo el demandado, tuvieron unas palabras porque el primero pretendía que el segundo tomase ron, a lo que éste se negó, amenazándole con echárselo en la cara e insultándolo con conceptos mortificantes; que Jesús Lorenzo siguió hacia la tienda de Gil Sánchez, compró allí unos encargos consistentes en bacalao, pan y azúcar, y se dispuso a regresar hacia su casa, llevando los artículos sobre la mano derecha y debajo de la mano izquierda el mocho de trabajar que había utilizado momentos antes; que cuando pasaba nuevamente por frente a la tienda de Antonio Soto, camino denominado 'Hernández', por donde necesariamente tenía que pasar, Miguel Lorenzo se adelantó y lo detuvo; Miguel Lorenzo, o sea el demandante, hombre joven y fuerte, le decía al demandado Jesús Lorenzo, que es un hombre de avanzada edad, 'cómete este guineo', restregándole por la boca y por el bigote un guineo maduro que tenía mondado por la mitad y luego lo cogió por el cuello instándole violentamente a que se lo comiera; Jesús Lorenzo gritó entonces 'caridad que me matan', y Miguel Lorenzo mientras lo apretaba le dijo 'pues ahora verás si te lo comes', sacando al efecto un puñal como de seis pulgadas, de dos filos, cabo colorado y de cruz; que cuando intentó herir con el puñal en forma desafiadora y muy amenazante a Jesús Lorenzo, éste súbitamente tiró los encargos al piso y defendiéndose con su machete de trabajo hirió a Miguel Lorenzo, o sea al demandante, siendo una sola la herida ocasionada."

No conforme el demandante, apeló para ante este tribunal. Señala en su alegato dos errores cometidos a su juicio por la corte sentenciadora al no tomar en consideración la "admisión judicial" hecha en corte abierta por el demandado al declararse culpable del delito de mutilación que se le imputara por los mismos hechos en que se basa la demanda, y al apreciar la prueba.

El primer testigo que declaró fué el propio demandante. Dijo, en parte: "Ese día, viniendo yo de un entierro . . . iba Jesús Lorenzo . . . y al verme me dijo, 'oye, sinvergüenza, ahora me vas a pagar las que me debes,' y en seguida me cayó a tajos."

Llamó entonces el demandante a declarar al perito médico cirujano Néstor de Cardona quien describió la herida recibida por el demandante así: "Era una herida incisa transversal, que le cercenaba no solamente los tejidos blandos sino los tejidos óseos y casi le amputaba el brazo."

Acto seguido presentó el demandante al secretario auxiliar de la corte a los efectos de introducir en evidencia "una admisión judicial hecha en corte abierta por el demandado Jesús Lorenzo el día 13 de julio de 1932, en la causa criminal número 4725 seguida por El Pueblo de Puerto Rico contra dicho Jesús Lorenzo por un delito de mutilación, a virtud de una acusación presentada y jurada por el señor fiscal de esta corte por los mismos hechos realizados por el demandado el día 24 de septiembre de 1931 en la persona de Miguel Lorenzo, o sea el aquí demandante, y en cuya admisión judicial hecha en corte abierta el demandado aceptó estos mismos hechos; y nos basamos en lo establecido en el Tomo 22 de Corpus Juris, página 421, inciso B, titulado 'Judicial Admissions' y en la página 423 del mismo tomo, bajo el párrafo 506, titulado 'In other Proceedings'."

Se opuso el demandado y la corte le dió la razón. Tomó excepción el demandante y pidió que "toda vez que esta prueba no ha sido admitida por la corte solicitamos que estos dos documentos, la acusación y la sentencia, se marquen Exhibits A y B como documentos denegados por la corte y que se ordene al taquígrafo que los transcriba literalmente en la transcripción de evidencia para ser revisados en una posible apelación, a fin de que el Honorable Tribunal Supremo tenga pleno conocimiento de la cuestión que se ha levantado."

La corte manifestó entonces que creía prudente reconsiderar su resolución y admitir condicionalmente la prueba, y

siendo las doce del día, se declaró en receso. Al reanudarse la vista el demandante le pidió que decidiera de módo definitivo si admitía o no los documentos, invocando la opinión de este Tribunal Supremo en el caso de *El Pueblo ex rel Mendín* v. *Seijo*, 43 D.P.R. 368, y la corte resolvió admitir la evidencia sin condición alguna.

El primer documento presentado fué la acusación. En parte dice:

"El fiscal formula acusación contra Jesús Lorenzo Méndez por un delito de Mutilación (*Felony*), cometido de la manera siguiente:— El referido acusado, Jesús Lorenzo Méndez, con anterioridad a la presentación de esta acusación, o sea, allá por el día 24 de septiembre de 1931, y en el barrio Voladoras del término municipal de Moca, . . . maliciosa y voluntariamente, y con la intención criminal de causar grave daño corporal en la persona del ser humano Miguel Lorenzo, lo acometió y agredió con un machete, arma mortífera, infiriéndole una herida de carácter grave, . . . quedando a consecuencia directa de dicha herida total y permanentemente mutilado dicho Miguel Lorenzo de la mano derecha."

El segundo, la sentencia, en parte, es como sigue:

"Corte de Distrito del Distrito Judicial de Aguadilla, P. Rico.— El Pueblo de Puerto Rico v. Jesús Lorenzo Méndez, Criminal Número 4,725.—Mutilación.—Sentencia.—Por cuanto, en el día de hoy y en Corte abierta compareció personalmente el acusado Jesús Lorenzo Méndez y se declaró culpable de un delito de Mutilación, consistente dicho delito en que el referido acusado allá por el día 24 de septiembre de 1931, en el barrio Voladoras . . .—Por cuanto, en vista de la confesión de culpabilidad hecha por el acusado del delito de Mutilación, la Corte, en cumplimiento de la Ley lo declaró convicto del expresado delito.—Por cuanto, el convicto Jesús Lorenzo Méndez renunció al término que para dictar sentencia . . .—La Corte resuelve que debe condenar y condena al acusado Jesús Lorenzo Méndez como culpable y convicto del expresado delito de Mutilación, a sufrir la pena de seis meses de presidio con trabajos forzados, . . ."

Y así terminó la prueba del demandante. La del demandado consistió en las declaraciones de Pedro López, Jenaro Lorenzo, Agustín Hernández y el propio demandado.

### Dijo el primero:

"Ese día estaba yo transportando una madera de un sitio a otro; allí donde pasó eso hay una casa y hay un callejón que va así; yo estoy a la parte atrás de ese callejón . . . ; de pronto cuando yo me estoy echando un paquete encima oigo que gritan 'caridad, caridad' y en seguida solté la madera y miré para allá y veo a este señor que está empatado con el otro . . . Jesús Lorenzo, mientras que Miguel Lorenzo tenía un guineo maduro en la mano y se lo restregaba en la boca a Jesús Lorenzo. . . Pues cuando le restregaba el guineo en la boca Jesús Lorenzo le dijo 'mira que soy una persona vieja y yo no quiero pelear contigo; déjame el camino' y entonces Miguel Lorenzo le contestó 'que te lo comes' y votó el guineo y se metió mano al seno, aquí a la pretina, y haló por el puñal; entonces éste traía unos encargos . . Sí, señor; y traía un machete debajo del brazo izquierdo, y al ver que el otro se le abalanzó encima votó lo que traía en la mano derecha y haló por el machete y le tiró y el otro salió herido; entonces Jesús Lorenzo còrrió para su casa y Jenaro Lorenzo le corrió detrás y le dió unas cuantas pedradas."

### El segundo, Jenaro Lorenzo, hermano del demandante, manifestó:

"Estando yo en casa de Gil Sánchez, en la tienda de Gil Sánchez, llegó como a las cuatro de la tarde Jesús Lorenzo a comprar unos encargos con un machete debajo del brazo; compró los encargos y después de haberlos comprado dijo que de qué manera cogería él el camino llamado Hernández para irse para su casa porque Miguel Lorenzo había tenido unas palabras con él, y entonces el señor Gil Sánchez le dijo que se fuera, que quizá no le pasaría nada; entonces él se fué y yo a la voz de que era con mi hermano me le fuí detrás . . . y al doblar por el callejón se tiró Miguel Lorenzo mi hermano de casa de Juan Higinio Nieves con un guineo maduro en la mano con la cáscara, y le dijo 'oye, Jesús, come de este guineo' y se lo restregó por el bigote y Jesús le decía 'respétame, . . . que yo soy una persona vieja y debes respetarme' pero Miguel Lorenzo seguía restregándole el guineo hasta que oí que dijo 'caridad, que me mata'. —P.—¿Quién dijo así?—R.—Jesús Lorenzo, porque mi hermano sacó un puñal como de cinco o seis pulgadas, cabo colorado; quizá mi hermano no tenía intención de herirlo sino por verlo correr porque Jesús Lorenzo es un hombre cobarde, pero al sacar Miguel Lorenzo el puñal Jesús Lorenzo largó los encargos del brazo derecho y cogió el machete que llevaba debajo del brazo izquierdo y le tiró a mi

hermano y lo cortó en el brazo derecho, y entonces Jesús Lorenzo se fué corriendo y yo le dí unos cuantos piedrazos por detrás.''

Poco dijo el tercero. Se limitó a expresar:

''Pues después cuando yo me retiraba de la tienda de Gil Sánchez iba Jesús Lorenzo con los encargos y Miguel Lorenzo salía de la tienda que estaba allí de Antonio Soto comiéndose un guineo maduro y entonces al Jesús Lorenzo pasar Miguel Lorenzo trató de hablar con él o algo así con el guineo maduro en la mano y yo me retiré.''

La declaración del demandado es completa. Manifestó que ''saliendo yo de mi casa. como a las cuatro de la tarde para la tienda a buscar unos encarguitos en casa de Gil Sánchez, . . . frente a la casa de Juan Higinio Nieves, . . . estaba allí este señor (el demandante) y me llamó y me dijo 'Jesús, ven acá y págate un palo de ron'; entonces yo entré y le dije 'pídete tú el palo que yo te lo pago pero yo no puedo tomar'.'' Insistió el demandante en que tomara y unos cuantos señores que allí había ''me dijeron 'Jesús, vete que este hombre lo que quiere es darte' y yo me despreocupé de todo y me fuí. . .'' Llegó a la tienda de Sánchez, ''le hice el cuento de lo que me había pasado y le dije 'Miguel Lorenzo me quiere dar y yo no encuentro cómo pasar por allí'; entonces yo pedí mis encarguitos—una libra de bacalao, dos libras de azúcar y media libra de pan—y me los puse en las manos; . . . entonces Gil Sánchez me dijo 'vete, que quizá no te pase nada' y con la misma me pongo debajo del brazo mi mocho, aquí debajo, y me tiro . . . y cuando voy entrando al callejón . . . vino Miguel Lorenzo y se me atravesó y me dijo 'toma, Chucho, come de este guineo'; entonces le dije 'no abuses; déjame pasar que yo no soy hombre de pelea; yo soy hombre de trabajo' pero él insistió y me dijo 'que te lo comes de cualquier manera' y me tiró a coger por el gañote y haló por un puñal y me tiró con el puñal; entonces yo eché tres pasos atrás y cogí el mocho y le tiré de plano con él con la mala suerte que lo corté.''

Explicando lo ocurrido con motivo de la causa criminal que se le siguiera manifestó que le había dado a su abogado trescientos dólares para que lo defendiera, no pudiendo el Jurado llegar a un acuerdo en el juicio; luego le dijo a su otro abogado que no tenía dinero para pagarle y el abogado le contestó "váyase que yo me encargo de arreglarle su caso" y "entonces, para que la corte me considerara, me declaré culpable, pero yo más nunca he sido culpable."

Terminada la prueba del demandado, el demandante llamó a Gerardo Lorenzo, quien declaró que Pedro López fué donde Jenaro Lorenzo y le dijo "aquí te manda Jesús Lorenzo ocho pesos y que no dejaras de decir lo que te habías comprometido con él a declarar", y el demandante entonces hizo comparecer de nuevo a Pedro López quien aseguró que era falso que le hubiera dado dinero alguno a Jenaro Lorenzo de parte de Jesús Lorenzo y que le dijera que no dejara de declarar lo que se había comprometido con él a declarar.

Conocidas las alegaciones y las pruebas y estudiados los alegatos de ambas partes, creemos que estuvo justificada la corte de distrito al dictar su sentencia.

Resumiendo la jurisprudencia sobre el efecto en los pleitos civiles de las sentencias dictadas en causas criminales, dice Ruling Case Law:

"La regla general es que la sentencia dictada en un proceso criminal no es óbice a una acción civil posterior proveniente de la misma transacción y que los autos del proceso criminal no son admisibles en el recurso civil, a no ser para el único fin de probar su propia existencia, de ser éste un hecho pertinente, siendo ése el único caso en que es admisible, mas son concluyentes para determinar el hecho de que tal sentencia ha sido dictada. Sin embargo, la sentencia no puede ofrecerse en evidencia en una acción civil para establecer la veracidad de los hechos en que la misma se basó. Así, pues, una persona procesada y convicta de un delito no está en su consecuencia impedida de instruir una acción civil y de probar en ella que era inocente del delito porque se le castigó. Lo inverso también es cierto, y una absolución en una causa criminal no es óbice a una ac-

ción civil instituída contra el acusado por el Estado, aunque a fin de obtener indemnización debe probársele que ha sido culpable del delito de que ya ha sido absuelto. Se ha resuelto igualmente que una sentencia absolutoria en una causa criminal no es evidencia admisible en favor del acusado en una acción civil, para probar que no fué culpable del delito que se le imputó.

"La regla general indudablemente es que una sentencia condenatoria en una causa criminal no puede ser ofrecida como prueba en una acción civil, especialmente cuando esta última es por los daños y perjuicios causados por el delito de que dicha parte ha sido convicta. De manera, pues, que los autos de un proceso por acometimiento y agresión no son admisibles en una acción civil proveniente de la misma transacción." 15 R. C. L. 1000.

Habiéndose establecido como razones de la regla por la propia jurisprudencia, las que siguen:

"Se ha indicado que los fines, controversias, resultados y procedimientos, así como las partes en las dos acciones son distintas, y que son de aplicación también distintas reglas de evidencia, tanto en lo atinente al peso de la prueba como a la admisibilidad o inadmisibilidad de los testigos. Una sentencia condenatoria en una causa criminal puede ser el resultado de prueba inadmisible en una acción civil. Y si bien en las causas criminales no puede obligarse a declarar al acusado, sin embargo, de ordinario puede compelerse a declarar a todas las partes en los casos civiles. El hacer que la decisión de una corte en tal caso sirva de evidencia en una causa criminal equivaldría a obligar al acusado en esta última a ser testigo contra sí mismo. Además con el propósito de obtener una convicción en un proceso criminal, debe quedar establecido fuera de toda duda razonable que el acusado ha infringido la ley, mientras que para obtener una sentencia favorable en una acción civil basta tan sólo probar el caso mediante preponderancia de evidencia. Esta diferencia en el grado de prueba exigido es considerada generalmente suficiente para impedir la aplicación de la doctrina de *res judicata.* Se ha dicho propiamente que una absolución en una causa criminal no equivale para todos los fines a una adjudicación contra el Estado, de que el acusado no cometió los actos imputádosle. Lo que un veredicto condenatorio realmente decide es que la prueba no excluye toda duda razonable de la culpabilidad del acusado." 15 R.C.L. 1002.

Como sucede siempre, la regla tiene excepciones, siendo una de ellas la que sigue:

"Cuando un acusado se declara culpable en una causa criminal, los autos de la misma son admisibles en un proceso civil al surgir la cuestión de si éste cometió el acto que sirvió de base a la acusación criminal; mas en tal caso se admiten los autos criminales, no como una sentencia que establece el hecho, sino como una declaración o admisión deliberadas de la parte al efecto de que tal hecho es cierto. No obstante, la alegación de culpabilidad no es concluyente contra el acusado en una acción civil y éste puede demostrar que en realidad de verdad no es culpable de ningún delito." 15 R.C.L. 1003.

De suerte que aun en un caso como el que estamos considerando y resolviendo, que es de excepción, la corte puede pesar la prueba y decidir como aquí decidió que el demandado no era responsable de los daños que se le reclamaban no obstante su declaración de culpabilidad en la causa criminal.

Lo que aquí ha ocurrido demuestra la sabiduría de la jurisprudencia en la forma establecida. Sólo en casos raros se concibe que una persona admita su culpabilidad siendo inocente. Pero los casos pueden existir y es justo que la puerta quede abierta a la excepción de la excepción. Abatido por el peso de la acusación y del hecho mismo, con la experiencia del juicio anterior, penado ya por los gastos realizados que se llevaron quizá lo mejor de sus pequeños bienes, ante la perspectiva de nuevos sufrimientos y nuevos compromisos superiores a sus fuerzas, se concibe que un hombre se entregue y acepte su culpabilidad y busque reposo en la prisión para volver luego a continuar su trabajo sin dificultades, sobre todo si ese hombre es un campesino, viejo, tan poco amigo de pendencias que hasta tiene fama de cobarde y si no obstante haber actuado en defensa propia lo cierto es que hirió y que la herida que causara a un semejante, pariente suyo además, tuvo las fatales consecuencias de privarle de su mano derecha. Una conciencia escrupulosa en casos tales, aunque la ley la proteja, se acusa siempre a sí

misma, porque se encuentra culpable en cierto modo de no haber ido hasta el sacrificio antes de repeler por la fuerza la ofensa de que fué víctima.

*Debe confirmarse la sentencia recurrida.*